**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**Ocala Division**

5:24-cv-672-SPC-PRL

Case No.: _____

MARIO E. RIVERO, JR,

Movant,

versus

LPL FINANCIAL LLC,

Respondent.

## MOTION TO VACATE ARBITRATION AWARD

**COMES NOW**, the Movant Mario E. Rivero, proceeding **_pro se_**, respectfully submits this Motion to Vacate the arbitration award issued on November 13, 2024, in FINRA Case No. 23-02354, pursuant to 9 U.S.C. § 10, and in support thereof states as follows:

### I.      INTRODUCTION

1.      Movant seeks to vacate an arbitration award rendered in favor of LPL Financial LLC, ("LPL Financial"), issued without proper jurisdiction, adequate notice, or an opportunity for Movant to participate in the arbitration process. Movant never signed a FINRA Submission Agreement or any other agreement consenting to arbitration. The arbitration was initiated unilaterally by LPL Financial, without consent, and Movant's counsel abandoned the arbitration at its inception. No effort was made by Respondent or the arbitration panel to notify Movant directly, depriving him of the opportunity to present a defense or raise equitable claims. **_See_** Exhibit #1.

2.      Further, the arbitration panel exceeded its authority under the Federal Arbitration Act (FAA), 9 U.S.C. § 10, by failing to consider valid defenses such as impossibility of performance and unjust enrichment, and by enforcing inequitable terms. These deficiencies render the award invalid and necessitate vacatur to uphold procedural fairness and compliance with statutory mandates.

### II.      JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 9 U.S.C. § 10 and 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.

4.      Venue is proper in the Middle District of Florida, Ocala Division, pursuant to 28 U.S.C. § 1391(b), because Movant is currently incarcerated at the Federal Correctional Complex (FCC Coleman

1

Camp) in Coleman, Florida.[1] Litigating in the District of New Jersey, where the arbitration occurred, would impose undue hardship on Movant.

### III.     FACTUAL BACKGROUND

5.      On or about October 1, 2020, Movant executed a promissory note with LPL Financial LLC for a principal amount of *$161,598*, with a provision for loan forgiveness contingent upon Movant's continued registration with LPL over a five-year period.

6.      Movant never signed a FINRA Submission Agreement or any arbitration agreement consenting to arbitrate disputes with LPL Financial.

7.      Due to the COVID-19 pandemic, LPL delayed Movant's onboarding, preventing him from commencing work until May 2021. This delay reduced the time available to meet the loan forgiveness terms.

8.      Shortly after beginning his affiliation with LPL, Movant faced allegations involving transactions that occurred during his prior employment at Wells Fargo Bank. These allegations were unrelated to his work with LPL.[2]

9.      On June 4, 2021, Movant accepted a plea agreement and was subsequently barred by FINRA from continuing as a registered representative. As a result, Movant's affiliation with LPL was terminated on May 12, 2021, constituting an Event of Default under the promissory note and triggering loan acceleration.

10.      Movant's original counsel failed to participate meaningfully in the arbitration process and abandoned the matter entirely at its inception. Movant was unaware of this abandonment and believed his interests were being represented.

11.      LPL initiated arbitration proceedings with FINRA on or about August 28, 2023, seeking recovery of the outstanding loan balance and related fees. Despite Movant's lack of representation, LPL Financial and the FINRA arbitration panel failed to notify Movant directly of the proceedings.

12.      Movant only became aware of the arbitration process when he received copies of the final award documents on or around the date the award was issued, November 13, 2024. By that time, it was impossible for him to defend himself or participate in the arbitration process.

13.      The FINRA arbitration panel issued an award in favor of LPL, ordering Movant to pay *$287,994.21*, including principal, interest, attorney fees, and costs.

### IV.     LEGAL STANDARD

14.      Under 9 U.S.C. § 10, an arbitration award may be vacated on the following grounds:

---

[1] *See* https://www.bop.gov/mobile/find_inmate/byname.jsp .

[2] *See* U.S.D.C. NJ, **United States v. Mario E. Rivero, Jr.,** 2:23-CR-00088-MCA-1.

(1) **Corruption, Fraud, or Undue Means**: If the award was procured by corruption, fraud, or undue means;

(2) **Evident Partiality or Corruption**: If the arbitrators demonstrated evident partiality or corruption;

(3) **Misconduct or Denial of Due Process**: If the arbitrators were guilty of misconduct, such as refusing to hear material evidence or denying a party due process; and

(4) **Exceeding Authority**: If the arbitrators exceeded their powers or rendered a decision outside the scope of the arbitration agreement.

V.    ARGUMENT

### A.  THE ARBITRATION PANEL LACKED JURISDICTION

15.    Arbitration is governed by consent. It cannot be imposed unilaterally. The Supreme Court has repeatedly held that arbitration requires mutual agreement between the parties. As stated in **First Options of Chicago, Inc. v. Kaplan**, 514 U.S. 938, 944 (1995): *"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."* **Id.**

16.    Movant never signed a FINRA Submission Agreement or any other agreement to arbitrate disputes with LPL Financial. Without evidence of Movant's consent, the arbitration panel lacked jurisdiction to adjudicate the dispute. This principle was reinforced in **Granite Rock Co. v. Int'l Bhd. of Teamsters**, 561 U.S. 287, 299 (2010), where the Court held: *"It is for courts to decide whether the parties have agreed to arbitrate in the first instance."* **Id.**

17.    By proceeding without a valid arbitration agreement, the panel acted beyond its authority, rendering the award unenforceable.

### B.  PROCEDURAL IRREGULARITIES DENIED MOVANT DUE PROCESS

18.    The arbitration process was marred by procedural defects, including:

(1) **Failure to Notify Movant**: Movant was never informed of the arbitration proceedings after his counsel abandoned the matter; and

(2) **Lack of Opportunity to Defend**: Movant became aware of the arbitration only after receiving the final award.

19.    Under 9 U.S.C. § 10(a)(3), vacatur is warranted when a party is denied a fair opportunity to present their case. As the Second Circuit explained in **Tempo Shain Corp. v. Bertek, Inc.**, 120 F.3d 16, 20 (2d Cir. 1997): *"An arbitrator's refusal to hear material evidence… or provide a fair opportunity to present a case constitutes misconduct."* **Id.**

20.    Here, the abandonment by counsel, compounded by Respondent and the panel's failure to notify Movant directly, violated fundamental principles of due process. The Fifth Circuit in **Gilbert v.**

3

**Serv. Lloyds Ins. Co.**, 273 F.3d 396, 400 (5th Cir. 2001), emphasized: *"When a party's ability to participate is impaired by notice deficiencies or counsel misconduct, due process is violated."* Id.

### C.  ENFORCEMENT OF THE AWARD IS INEQUITABLE

#### 1.  Impossibility of Performance:

21.    The COVID-19 delays and FINRA restrictions rendered performance under the loan agreement impossible. Performance impossibility is a recognized defense, as noted in **Harris v. Parker Coll. of Chiropractic**, 286 F.3d 790, 793 (5th Cir. 2002): *"Arbitrators exceed their authority when they fail to consider valid defenses raised by the parties, such as impossibility of performance."* Id.

#### 2.  Unjust Enrichmen:

22.    LPL Financial unjustly benefited by enforcing repayment without addressing the impossibility of performance. The Supreme Court in **Peacock v. Thomas**, 516 U.S. 349, 355 (1996), stressed: *"Courts and arbitrators must avoid outcomes that lead to unjust enrichment, which violates equity."* Id.

### VI.    CONCLUSION

23.    In conclusion, the arbitration award issued on November 13, 2024, in FINRA Case No. 23-02354, is fundamentally flawed and must be vacated for multiple reasons grounded in law, equity, and procedural fairness.

24.    First, the arbitration panel lacked jurisdiction to adjudicate this dispute because no valid arbitration agreement existed. The absence of a signed FINRA Submission Agreement or any evidence of Movant's consent to arbitration directly contravenes the principles established in **First Options of Chicago, Inc. v. Kaplan**, 514 U.S. 938, 944 (1995) and **Granite Rock Co. v. Int'l Bhd. of Teamsters**, 561 U.S. 287, 299 (2010), which mandate that arbitration cannot proceed without mutual agreement. Allowing this award to stand would undermine the fundamental requirement of consent that forms the cornerstone of the Federal Arbitration Act.

25.    Second, procedural irregularities denied Movant his right to due process. Movant's counsel abandoned the arbitration process at its inception, leaving Movant without representation or notice of the proceedings. Neither Respondent nor the FINRA arbitration panel made reasonable efforts to notify Movant directly, depriving him of the opportunity to present a defense or participate in any meaningful way. As held in **Tempo Shain Corp. v. Bertek, Inc.**, 120 F.3d 16, 20 (2d Cir. 1997) and **Gilbert v. Serv. Lloyds Ins. Co.**, 273 F.3d 396, 400 (5th Cir. 2001), such procedural deficiencies constitute misconduct warranting vacatur under 9 U.S.C. § 10(a)(3).

26.    Third, the arbitration panel exceeded its authority by failing to consider critical equitable defenses, including impossibility of performance and unjust enrichment. Delays caused by the COVID-19 pandemic and Movant's subsequent FINRA bar rendered performance under the promissory note's terms impossible. The panel's disregard for these defenses violates the principles articulated in **Harris v. Parker Coll. of Chiropractic**, 286 F.3d 790, 793 (5th Cir. 2002) and **Peacock v. Thomas**, 516 U.S. 349, 355 (1996), which require arbitrators to act within the scope of the agreement and ensure outcomes consistent with equity and fairness.

27.     Finally, enforcing this arbitration award would result in profound injustice. Movant was deprived of procedural safeguards and subjected to an arbitration process that proceeded without his knowledge, consent, or opportunity to defend himself. Upholding such an award would contravene the principles of fairness and justice that courts are obligated to protect.

28.     For these reasons, Movant respectfully requests that this Court vacate the arbitration award in its entirety, or, alternatively, remand the matter for reconsideration with instructions to address the procedural deficiencies and equitable defenses raised herein. Such relief is necessary to correct the procedural and substantive errors that have deprived Movant of his rights under the law.

**WHEREFORE**, the Movant Mario E. Rivero, Jr., *pro se*, hereby respectfully requests that this Honorable Court grant the following reliefs: (1) Vacate the arbitration award issued on November 13, 2024, in FINRA Case No. 23-02354, pursuant to 9 U.S.C. § 10; (2) Alternatively, remand the matter to FINRA arbitration with instructions to address procedural deficiencies and equitable defenses; and (3) Grant such other relief as the Court deems just and proper. This motion is filed pursuant to 28 U.S.C. § 1746 and 18 U.S.C. § 1621. Signed today 4th day of December, 2024, in Coleman, Florida.

Respectfully Submitted,

*Mario Rivero*

**Mario E. Rivero, Jr., *Pro Se***
**Movant**
Reg. No. 90914-509
Federal Correctional Complex
Coleman Camp
P.O. Box 1031
Coleman, Florida 33131

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** under penalty that on the day 4th of December, 2024, I placed a true and correct copy of the foregoing document in the prison mailing system pursuant to the prison mailbox rule to be sent via US Mail to the United States District Court for the Middle District of Florida, Ocala Division, Attention: Office of the Clerk, 207 Northwest Second Street, Ocala, Florida 34475.

Respectfully Submitted,

*Mario Rivero*

**Mario E. Rivero, Jr., *Pro Se***

**Movant**
Reg. No. 90914-509
Federal Correctional Complex
Coleman Camp
P.O. Box 1031
Coleman, Florida 33131

# EXHIBIT #1

P

# ◢▉ LPL Financial

1055 LPL Way
Fort Mill, SC 29715

(704) 733-3300

May 12th, 2021

MARIO RIVERO (JR)
19 BROAD ST
RED BANK, NJ 07701

**Via Fed Ex Overnight Delivery**

Re:  Termination of Registration(s)

Mr. Rivero Jr,

The purpose of this letter is to notify you that LPL Financial ("LPL" or "the Firm") has terminated your registration(s) with the Firm, for cause. Your termination was effective at the close of business 5/12/2021. You must immediately cease and desist from holding yourself out to the public as an LPL representative. All business cards and stationery mentioning your association with LPL should be immediately destroyed and any advertisements cancelled.

Your Form U5 will reflect the circumstances under which you were discharged from LPL and a copy will be mailed to your home address. Please note that your email received at LPL will not be forwarded to you after termination.

All open client orders will be cancelled on your date of termination. If your clients need to process a transaction, please refer them to the LPL Client Services Line at 1-800-877-7210, extension 6610.

In the event you have outstanding loans or accounts receivable balances with LPL, they have accelerated by your separation from LPL and are now due in full. Finance will provide you with information regarding any outstanding balance, including any loan amounts owed and accounts receivable amounts accrued, absent accounts receivable incurred but not yet recorded for business prior to your termination date.  Pursuant to your agreement(s) with LPL, interest may continue to accrue until the balance is paid.

Please make arrangements for payment of the amount due with Finance at LPLFinancialAdvisorReceivables@lpl.com.  Should you decide not to contact Finance to make arrangements, you may be in breach of the loan agreement and/or your representative agreement and LPL refers such matters to attorneys for full recoupment.  You are on notice that such efforts, if LPL must take them, will result in your liability not only for the amount due but also for all attorneys' fees and costs LPL incurs while collecting, and interest on such loans and debts.  We ask that you kindly reach out to Finance today to avoid these issues.

Your commission statement will continue for sixty (60) days from your termination date and will reflect business prior to your termination date, including any additional accounts receivable incurred.  Therefore, the notice of amounts owed does not waive LPL's right to collect additional accounts receivable accrued as your balance is finalized.  Finance can work with you to help you understand any additional amounts owed.

You may wish to take client account records with you as you depart LPL.  You may only do so in accordance with LPL's Branch Office Security Policy and related policies and procedures, including the Consumer Privacy Notice's provisions concerning opt-ins and opt-outs.  Below is a list of all clients who

Member FINRA/SIPC

# LPL Financial

1055 LPL Way
Fort Mill, SC 29715

(704) 733-3300

have elected to "opt out" of the transfer of client information to you and your new firm. Note that all clients who reside in California, North Dakota or Vermont, are automatically opted out unless they "opt in" to sharing their information.   All books and records for "opt out" clients and CA, ND and VT clients (except for those that opt-in) should be sent back to LPL, and no copies should be kept.  In addition, you must delete any electronic data for these clients on any systems that you maintain.

The only information that you may take for these "opt out" clients is information permitted by the terms of the Protocol for Broker Recruiting, which presently includes: name, address, phone number, email address and account title.

Information beyond that may only be taken to another broker-dealer/RIA for the purposes of that broker-dealer/RIA marketing to that customer upon the affirmative consent and request of the customer.  You should refer to the Advisor Compliance Manual section titled "Privacy-Related Obligations at Separation from LPL" for further information.

Clients who have opted out:

[None]


All CA, ND & VT Clients are opted out, except the following:

[None]


**Client account records include, but are not limited to, the following: direct business account applications, direct business account statements, customer correspondence, request to switch investment forms, prospectus receipts, delivery receipts, internal hand-written or computer generated notes, security and check receipts, confirmation of customer identification and proof of delivery of LPL's privacy policy to customers.** Please send your books and records to your OSJ's office within 10 business days of termination. If you prefer to upload your books and records using iDoc, or currently use iDoc, please notify the Centralized Supervision Unit by sending an email to booksandrecords@lpl.com when all books and records have been uploaded.


Regards,

Compliance, Legal & Risk

# PROMISSORY NOTE

<div align="center">
LPL Financial LLC<br>
San Diego, California
</div>

Principal Loan Amount:
$161,598

Date of Execution: October 1, 2020

FOR VALUE RECEIVED, the undersigned Mario Rivero, Jr. ("Borrower") of 10 Broad St. Suite 202, Red Bank, NJ, 07701, promises to pay to the order of **LPL Financial LLC** ("LPL") at its office at <u>4707 Executive Drive, San Diego, CA 92121</u>, or at such other place as LPL may designate, in lawful money of the United States of America and in immediately available funds, the principal loan amount of One Hundred Sixty One Thousand, Five Hundred Ninety Eight Dollars $161,598 ("Principal"), or so much thereof as may be outstanding with interest thereon, whether before or after any breach hereof.

1. **Maturity Date.** Subject to the obligation of LPL to forgive the principal and interest on this Note in accordance with provisions below, Borrower will be required to repay the Principal on this Note no later than October 01, 2025 (the "Maturity Date") or upon an Event of Default (as defined below), whichever occurs first.

2. **Principal and Interest.** The Principal balance shall bear interest at the minimum federal rate per annum published by the Internal Revenue Service ("IRS") (computed on the basis of a 360-day year, actual days elapsed) as of the date the proceeds of the loan is paid to Borrower by LPL ("Disbursement Date"). Interest shall begin accruing on the Disbursement Date. If any Event of Default or any event, act or condition that with notice or lapse of time, or both, would constitute an Event of Default occurs and is continuing, interest shall accrue at the minimum federal rate per annum published by the IRS that would otherwise be applicable plus a rate no greater than 8%, such rate shall be determined in LPL's sole discretion. All such interest shall be payable upon demand.

3. **Forgiveness of Principal and Interest.** LPL shall forgive the Principal plus calculated accrued interest on this Note in accordance with the terms set forth on <u>Exhibit A</u> hereto. The forgiveness of Principal and interest under this Note will cease upon the occurrence of an Event of Default.

4. **Income Taxes.** Borrower hereby acknowledges responsibility for the payment of income taxes in connection with the forgiveness of principal and interest under this Note.

5. **Purpose and Use of Funds.** The purpose of this loan is to be used for the Borrower's transition needs in connection with Borrower's association with LPL (for example, to offset ACAT fees, technology set-up fees, marketing and mailing costs, stationery and licensure transfer fees).

6. **Application of Payments.** All payments shall be applied in the following order: (a) to any costs and expenses owed to LPL hereunder, including any collection costs and expenses owed to LPL hereunder; (b) to the current interest accrued on this Note; (c) to the outstanding interest which has accrued on the balance of the Note; and (d) to the outstanding Principal balance of the Note. If any payment is not accompanied

<div align="center">Page 1 of 6</div>

Rep Initial: 

LPL Initial: TRE

with specific instructions as to application, and Borrower has any obligation to LPL other than this Note, LPL may apply the payment to such obligation as LPL may elect in its sole discretion.

7. **Prepayment of Principal.** Borrower may from time to time partially or wholly repay the outstanding borrowings without penalty. Prepayments will be applied to the Principal amount of the Term Note and either (a) applied to the Principal and the term will remain the same, which will generate a new monthly payment schedule, or (b) decrease the term of the Term Note and LPL will generate a new monthly payment schedule based on the prepayment amount and on the shortened term (note, Borrower must request the shortened term). Borrower may designate how the prepayment shall be applied, however, if instructions do not accompany the payment then LPL will apply the prepayment in its sole discretion.

8. **Lien.** Borrower agrees and hereby grants to LPL a security interest in all non-qualified brokerage and investment advisory accounts, whether now owned or hereafter acquired, maintained at LPL in which Borrower has any ownership or beneficial interest in (collectively, the "Accounts") and further, Borrower shall transfer to LPL any and all securities or investment advisory accounts Borrower maintains at other securities or investment advisory firms within thirty (30) days of execution of this Note. Upon the occurrence of an Event of Default, Borrower and LPL agree that LPL, in its capacity as securities intermediary of the Accounts shall comply with entitlement orders originated by LPL, in its capacity as holder of this Note, without the further consent by Borrower, including, without limitation, orders to freeze and/or sell any securities or other assets held in such Accounts in order to satisfy all costs, expenses and amounts of principal and interest owed to LPL.

9. **Events of Default.** The occurrence of any of the following shall constitute an "Event of Default" under this Note:

    a.   the failure to make any payment of Principal or interest or other amount when due under this Note or a material default on any other obligation Borrower has with LPL;

    b.   the death, incapacity, dissolution, termination of existence, merger, consolidation, insolvency, business failure, appointment of a receiver of any part of the property of, assignment for the benefit of creditors, or the commencement of any proceeding under bankruptcy or insolvency laws by or against Borrower or any guarantor or surety of Borrower or Borrower is generally not paying his debts as they become due or any attachment or levy on any property of Borrower or against Borrower or any guarantor;

    c.   the notice of termination or the voluntary or involuntary termination of the Registered Representative Agreement that Borrower has executed with LPL;

    d.   any default in the payment or performance of any obligation, or any defined event of default, under any provisions of any contract or instrument pursuant to which Borrower has incurred any obligation for borrowed money, any purchase obligation, or any other liability of any kind to any person or entity, including LPL;

    e.   Borrower becomes a supervised person (as defined by the Investment Advisers Act of 1940) of any registered investment adviser, other than LPL, provided that, as of the Date of Execution, Borrower was a supervised person of LPL;

    f.   any warranty, representation or statement made or furnished to LPL by or on behalf of Borrower, including but not limited to any financial statement or legal document proves false or misleading;



Rep Initial: MRJ

LPL Initial: TRE

52853-1

g.    any sale or transfer of all or a substantial or material part of the assets of Borrower or assignment of Borrower's commissions and fees without prior express written consent of LPL;

h.    any violation or breach of any other provision of this Note, or any defined event of default under, letter agreement, guaranty, security agreement, deed of trust or other contract or instrument executed in connection with this Note or securing this Note;

i.    a failure to abide by any of the terms and conditions contained in any agreement Borrower has with LPL or material failure to follow LPL policies and procedures; or

j.    LPL has a good faith belief that the prospect of timely repayment is impaired based on LPL's commercially reasonable assessment that Borrower's prospects of repayment are materially diminished.

Upon the occurrence of any Event of Default, LPL, at its option, may declare all sums of Principal and interest outstanding and any other amount payable hereunder to be immediately due and payable without presentment, demand, protest or notice of any kind, all of which are expressly waived by Borrower; provided that if an Event of Default specified in clause (b) shall occur, all Principal, interest and other amounts payable hereunder shall automatically become due and payable without presentment, demand, or protest or notice of any kind, all of which are expressly waived by Borrower.

10. **Special Covenants.** Borrower represents, warrants and covenants as follows (collectively, "Special Covenants"):

a.    In no more than sixty (60) days from the Disbursement Date, Borrower shall have fully established and executed a succession plan through, and to the satisfaction of LPL.

11. **Cost of Enforcement**. The Borrower shall pay to LPL the full amount of all costs and expenses, including reasonable attorney's fees (to include outside counsel fees and all allocated costs of LPL's in-house counsel), incurred by LPL in connection with the enforcement of its rights and/or the collection of any amount which becomes due to LPL under this Note or the prosecution and defense of any action in any way related to this Note, including without limitation any action for declaratory relief.

12. **Right to Offset.** Borrower acknowledges and agrees that in order to contribute to the satisfaction of the repayment obligation hereunder, LPL is authorized to make the necessary deductions from Borrower's interest or entitlement in any commissions, overrides, bonus payments, reimbursements, or fees payable by LPL to Borrower, or in any other amounts owed by LPL to Borrower or its affiliated companies, or in any other amounts owed by LPL to Borrower or its affiliated companies. Borrower also agrees that LPL has and shall have the right to apply any funds held in Borrower's accounts at LPL in which LPL is legally entitled to satisfy any amount remaining outstanding pursuant to the terms of this Note.

13. **Binding on Heirs and Assigns**. This Note inures to and binds the heirs, legal representatives, successors and assigns of Borrower and LPL; provided, however, that Borrower may not assign this Note or any proceeds of it or assign or delegate any of its rights or obligations, without LPL's prior written consent in each instance. LPL in its sole discretion may transfer this Note and may sell or assign its interest in this Note by giving written notice to Borrower.

14. **Confidentiality**. The terms and existence of this Note are confidential and shall not be disclosed by Borrower to any third party without the prior written consent of LPL, unless otherwise required by



Rep Initial: MRJ

LPL Initial: TRE

applicable laws and regulations (in which case Borrower agrees to inform LPL prior to such disclosure to the extent lawfully permitted to do so). Borrower's obligations of confidentiality shall survive satisfaction or termination of this Note.

15. **Investment Adviser Disclosure.**  If Borrower provides advisory services through an independent investment advisor firm, Borrower acknowledges that it is Borrower's responsibility to determine, including through consultation with counsel, whether the terms of this Note present a conflict of interest that is required or appropriate to disclose to the clients of the investment advisor firm (*e.g.*, through Form ADV). Borrower acknowledges and agrees that LPL may share this Note with Borrower's independent investment advisor firm chief compliance officer for purposes of assessing disclosure requirements. Borrower represents to LPL that it shall make any such disclosures relating to the terms and conditions of this Note as are required in accordance with Borrower's fiduciary duty under the Investment Advisers Act of 1940 and the rules and regulations thereunder and all other applicable law.

16. **Independent Contractor Relationship.**  This Note shall not constitute a contract of employment. The Borrower's relationship with LPL is that of an independent contractor on an "at-will" basis which means that either party may terminate its association with the other at any time for any reason or no reason. Nothing herein shall be construed as a contract for employment or contract of association for any specified period of time.

17. **Arbitration.**  Any controversy or claim arising out of or relating to this Note or any other loan document or the breach thereof, shall be submitted to arbitration before the Financial Industry Regulatory Authority, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Arbitration shall be the exclusive remedy for the settlement of disputes arising from or relating to this Note. The decision of the arbitrator shall be final, conclusive and binding on all interested persons and no action at law or inequity shall be instituted other than to enforce the award of the arbitrator. The place of arbitration shall be San Diego, California. This Note shall be construed in accordance with the laws of the State of California, without regard to its conflict of laws rules. Except as may be required by law, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of LPL and Borrower.

18. **Usury Savings Clause.**  Notwithstanding anything to the contrary contained herein, the interest paid or agreed to be paid under this Note shall not exceed the maximum rate of non-usurious interest permitted by applicable law or, to the extent allowed by law, under such applicable laws which may hereafter be in effect and which allow a higher maximum non-usurious interest rate than applicable Laws now allow (the "Maximum Rate"). If LPL shall receive interest in an amount that exceeds the Maximum Rate, the excess interest shall be applied to the Principal of this Note or, if it exceeds such unpaid Principal, refunded to Borrower. In determining whether the interest contracted for, charged, or received by LPL exceeds the Maximum Rate, such Person may, to the extent permitted by applicable law, (a) characterize any payment that is not Principal as an expense, fee, or premium rather than interest, (b) exclude voluntary prepayments and the effects thereof, and (c) amortize, prorate, allocate, and spread in equal or unequal parts the total amount of interest throughout the contemplated term of the obligations hereunder.

19. **Modification.**  This Note is the complete and exclusive statement of the agreement between LPL and Borrower and supersedes all prior written and oral communications and agreements relating to the subject matter hereof. No modification, termination, extension, renewal or waiver of any provision of this Note shall be effective unless agreed upon in writing and signed by an authorized representative of LPL and Borrower.

Rep Initial: 

LPL Initial:

52853-1

DocuSign Envelope ID: 84B6A7F4-B16D-D657...

20. **Severability**.    The provisions of this Note shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions of this Note.  If any provision of this Note is invalid or unenforceable, a suitable and equitable provision negotiated in good faith by the parties hereto shall be substituted therefor in order to carry out the intent and purpose of such invalid or unenforceable provision.

21. **Section Headings.**  The section headings are inserted in this Note for convenience of reference only and shall not affect the meaning or interpretation of this Note.

22. **Counterparts**.  This Note may be signed in one or more counterparts, each of which shall be an original, with the same effect as if the signatures were upon the same document.  A copy of this Note executed by a party hereto that is provided to the other party via facsimile or other electronic means shall have the same effect as the original executed copy of this Note.

**LPL FINANCIAL LLC**

BY: _Toli Reed Eastley_
D6DFB2648E3C48B...

NAME/TITLE:    Reed Eastley
                 SVP Advisor Capital

**BORROWER**

Borrower:  _Mario Rivero, Jr._
BF7611EEBBA3432...

Mario Rivero, Jr.

Rep Initial: MRJ

LPL Initial: TRE

52853-1

DocuSign Envelope ID: 24D8A7C3-0B57-245B-87FB-1B16D736257

## Exhibit A

### Forgiveness of Note Terms

Notwithstanding any other provisions of this Note to the contrary, the terms of this <u>Exhibit A</u> shall take priority.

For purposes of this <u>Exhibit A</u>, the following terms shall have the following meanings:

**"Borrower"** shall mean the individual listed as Borrower in the first paragraph of this Note.

**"Anniversary Date"** shall mean the month and day of the Date of Issuance of this Note. For example, Year 1 shall consist of the first full twelve months from the date of issuance of this Note and the subsequent years shall be the immediately succeeding twelve month periods each "Anniversary Date". The Anniversary Date at Year 5 shall be synonymous with Maturity Date.

**"Forgiveness Amount"** shall mean 1/5th of Principal plus interest forgiven on each Anniversary Date of the Note.

| | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|
| Forgiveness Amount: (1/5th of P&I) | $32,319.6 Plus Interest | $32,319.6 Plus Interest | $32,319.6 Plus Interest | $32,319.6 Plus Interest | $32,319.6 Plus Interest |

As specified above, for each Anniversary Date that the Borrower is registered with LPL, the corresponding amount of Principal and accrued interest shall be forgiven as set forth above. At any time during the 5 years listed above for which the Borrower is not registered/licensed with LPL, the remaining balance of the loan will be immediately due in full.

For example, if during Year 4 and before the Anniversary Date the Borrower's registration with LPL is terminated for any reason thereby triggering an Event of Default, then 40% of the Principal plus interest will be immediately due in full. Principal and interest in Years 1 through 3 have previously been forgiven (60% of Principal plus interest).

Rep Initial:  MRJ

LPL Initial: TRE

52853-1

# ACH Transfer Instructions

Please include the following information for all ACH transfers to your bank account:

| Account Type: | Checking  x                    Savings |
|---|---|
| Bank Name: | Bank Of America |
| Bank Address: | 170 Broad St #1000, Red Bank, NJ 07701 |
| Routing #: | 021200339 |
| Confirm Routing #: | 021200339 |
| Account #: | 381052082766 |
| Confirm Account #: | 381052082766 |
| Account Name: | MARIO E RIVERO JR |

By signing below, you represent that the foregoing information is true and accurate and you are the proper party to receive funds to this account. You also agree to indemnify and hold harmless LPL Financial and its employees and affiliates from and against any and all claims or liabilities resulting from this information. LPL Financial takes no responsibility for funds if the above information is not accurate.

Borrower: Mario Rivero, Jr.

Sign:  *Mario Rivero, Jr.*
DocuSigned by:
BF7611EEBBA3432...

DocuSign Envelope ID: 5823ADA1-786F-4E44-9139-E439BACCF4C7



## FINANCIAL INDUSTRY REGULATORY AUTHORITY (FINRA)
## NOTICE TO EMPLOYER

**Via Certified Mail, Return Receipt Requested (9314 8699 0430 0083 1606 88), First Class Mail**

TO:      Matthew Applebaum, Sr. Vice President, Compliance
LPL Financial LLC
1055 LPL Way
Fort Mill, SC 29715

FROM:   FINRA
Department of Enforcement
99 High Street, Suite 900
Boston MA 02110

DATE:   June 4, 2021

RE:      Acceptance of Letter of Acceptance, Waiver, and Consent ("AWC") for
Mario E. Rivero, Jr., Matter No. 2021071160701

FINRA has taken final disciplinary action against **Mario E. Rivero, Jr.,** who, according to our records, is associated with your firm. Attached is a copy of the final AWC, which sets forth FINRA's findings and the sanctions imposed, and the Notice of Acceptance sent to the Respondent.

The bar is effective immediately.

This information is being given to you so that you may fulfill your supervisory and other obligations under securities industry rules and regulations. If you have any questions concerning this matter, please call me at (617) 532-3428.

*Jeff Fauci*
_____

James J. Fauci
Director

Enclosure(s)

cc:      Mario E. Rivero, Jr.
19 Broad Street
Red Bank, NJ 07701-1901

        Gilberto Garcia
25 E. Spring Valley, Suite 330
Maywood, NJ 07603

# ▞ LPL Financial

4707 Executive Dr.
San Diego, CA 92121-3091
858 450 9606 *office*

VIA Email
August 12, 2021

Mario Rivero – 235N
10 Broad St. Suite 202
Red Bank, NJ 07701
marioriverojr22@gmail.com

      Re:    Notice of Outstanding Balance of $192,053.80 Due to LPL Financial LLC

Dear Mr. Rivero,

Thank you for the opportunity to service your securities business while affiliated with LPL Financial LLC ("LPL"). Your affiliation terminated on 05/12/2021 and constituted an "Event of Default" under the agreement(s) that you entered with LPL. As a result, LPL is entitled to declare all sums, including accounts receivable, principal, interest, and any other amounts payable under the agreement(s) immediately due and payable. By this letter, LPL hereby notifies you that LPL has exercised its contractual right to accelerate payment under the agreement(s) and as of 08/12/2021 you have an outstanding balance due of $192,053.80.

Our records indicate that the following loan amount, calculated as of today with interest (which continues to accrue) is due: $183,191.76. In addition, the following accounts receivable amount, absent accounts receivable incurred but not yet recorded for business prior to your termination date, is due: $8,862.04, including $5,176.24 in fees and $3,685.80 in past due loan fees. Please see the attached detail for the balance owed. Pursuant to your agreement(s) with LPL, interest may continue to accrue until the balance is paid.

Please promptly make arrangements for payment of the current total amount due with Finance at LPLFinancialAdvisorReceivables@lpl.com or (800) 877-7210. Payments should be remitted by certified check made payable to LPL Financial LLC (including your REP ID in the memo line) to:

| Regular Mail: | Overnight: |
|---|---|
| LPL Financial | LPL Financial |
| *Attn: Client Compensation* | *Attn: Client Compensation* |
| P.O. Box 509026 | 4707 Executive Dr. |
| San Diego, CA 92150-9026 | San Diego, CA 92121 |

You should know that if you decide not to remit payment, you will be in breach of your agreement(s) with LPL, and LPL may refer such matters to attorneys for full recoupment. You are on notice that such efforts, if LPL must take them, will result in your liability not only for the amount due, but also for all attorneys' fees and costs LPL incurs while collecting, interest on such debts, and potentially other items depending on the agreement and law.

1

Your commission statement will continue for sixty (60) days from your affiliation termination date and will reflect business prior to your affiliation termination date, including any additional accounts receivable incurred but not yet reflected above. Therefore, this notice of amounts owed does not waive LPL's right to collect additional accounts receivable accrued as your balance is finalized. Finance can work with you to help you understand any additional amounts owed. We appreciate your attention to this matter and anticipated cooperation.

Sincerely,

Advisor Receivables
LPLFinancialAdvisorReceivables@lpl.com

Award
**FINRA Dispute Resolution Services**

In the Matter of the Arbitration Between:

Claimant
LPL Financial LLC

Case Number: 23-02354

vs.

Respondent
Mario Everildo Rivero, Jr.

Hearing Site: Jersey City, New Jersey

Awards are rendered by independent arbitrators who are chosen by the parties to issue final, binding decisions. FINRA makes available an arbitration forum—pursuant to rules approved by the SEC—but has no part in deciding the award.

Nature of the Dispute: Member vs. Associated Person

The evidentiary hearing was conducted by videoconference.

### REPRESENTATION OF PARTIES

For Claimant LPL Financial LLC ("Claimant"): Neil S. Baritz, Esq., and Andrew Thompson, Esq., Baritz & Colman LLP, Boca Raton, Florida.

Respondent Mario Everildo Rivero, Jr. ("Respondent") did not appear for the evidentiary hearing. Previously represented by Gilberto M. Garcia, Esq., Maywood, New Jersey.

### CASE INFORMATION

Statement of Claim filed on or about: August 28, 2023.
LPL Financial LLC signed the Submission Agreement: August 28, 2023.

Statement of Answer filed by Respondent on or about: May 16, 2024.
Mario Everildo Rivero, Jr. did not sign the Submission Agreement.

### CASE SUMMARY

In the Statement of Claim, Claimant asserted the following causes of action: breach of registered representative agreement; and breach of promissory notes.

Unless specifically admitted in the Statement of Answer, Respondent denied the allegations made in the Statement of Claim and asserted various affirmative defenses.

FINRA Dispute Resolution Services
Arbitration No. 23-02354
Award Page 2 of 4

## RELIEF REQUESTED

In the Statement of Claim, Claimant requested: the outstanding principal balance of $5,176.24, due and owing under the Registered Representative Agreement; interest at a rate of 5.25% per annum from September 10, 2021 until the date that Respondent satisfies the obligations to Claimant; the outstanding principal balance of $161,598.00 due and owing under Promissory Note 1; interest at a rate of 9.07% per annum from May 12, 2021 until the date that Respondent satisfies the obligations to Claimant; the outstanding principal balance of $25,306.00 due and owing under Promissory Note 2; interest at a rate of 11.25% per annum from May 12, 2021 until the date that Respondent satisfies the obligations to Claimant; the costs of collection and of this proceeding, including attorneys' fees; and for other relief deemed just and equitable.

In the Statement of Answer, Respondent requested that Claimant's claims be denied.

## OTHER ISSUES CONSIDERED AND DECIDED

The Arbitrators acknowledge that they have each read the pleadings and other materials filed by the parties.

Respondent did not file a properly executed Submission Agreement but is required to submit to arbitration pursuant to the Code of Arbitration Procedure ("Code") and, having answered the claim, is bound by the determination of the Panel on all issues submitted.

On May 21, 2024, Respondent filed a Motion to Dismiss pursuant to Rule 13504 of the Code. On July 12, 2024, Claimant filed a response opposing the motion. On August 21, 2024, Respondent withdrew the motion, and the Panel accordingly issued an Order denying the Motion to Dismiss with prejudice.

Respondent did not appear at the evidentiary hearing. Upon review of the file, the Panel determined that Respondent received due notice of the hearing and that arbitration of the matter would proceed without Respondent present, in accordance with the Code.

## AWARD

After considering the pleadings, the testimony and evidence presented at the hearing, and any post-hearing submissions, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1. Respondent is liable for and shall pay to Claimant the sum of $254,944.21 in compensatory damages, which includes accrued interest through November 7, 2024.

2. Respondent is liable for and shall pay to Claimant interest at the daily rate of $49.37 from November 7, 2024, through and including date of payment of the award in full.

3. Respondent is liable for and shall pay to Claimant $1,000.00 to reimburse Claimant for the non-refundable portion of the filing fee previously paid to FINRA Dispute Resolution Services.

FINRA Dispute Resolution Services
Arbitration No. 23-02354
Award Page 3 of 4

4. Respondent is liable for and shall pay to Claimant the sum of $25,975.00 in attorneys' fees
pursuant to terms of the parties' contracts.

5. Any and all claims for relief not specifically addressed herein are denied.

## FEES

Pursuant to the Code of Arbitration Procedure ("Code"), the following fees are assessed:

### Filing Fees
FINRA Dispute Resolution Services assessed a filing fee* for each claim:

| | |
|---|---|
| Initial Claim Filing Fee | =$ 2,125.00 |

*The filing fee is made up of a non-refundable and a refundable portion.*

### Member Fees
Member fees are assessed to each member firm that is a party in these proceedings or to the
member firm that employed the associated person at the time of the event giving rise to the
dispute. Accordingly, as a party, LPL Financial LLC is assessed the following:

| | |
|---|---|
| Member Surcharge | =$ 1,700.00 |
| Member Process Fee | =$ 3,250.00 |

### Hearing Session Fees and Assessments
The Panel has assessed hearing session fees for each session conducted. A session is any
meeting between the parties and the Arbitrators, including a pre-hearing conference with the
Arbitrators, which lasts four (4) hours or less. Fees associated with these proceedings are:

One (1) pre-hearing session with a single Arbitrator @ $450.00/session
Pre-Hearing Conference:  April 30, 2024          1 session          =$    450.00

Three (3) pre-hearing sessions with the Panel @ $1,125.00/session
Pre-Hearing Conferences: December 18, 2023    1 session          =$ 3,375.00
                         June 24, 2024         1 session
                         August 21, 2024       1 session

Two (2) hearing sessions @ $1,125.00/session                      =$ 2,250.00
Hearings:                September 6, 2024     1 session
                         November 7, 2024      1 session

| | |
|---|---|
| Total Hearing Session Fees | =$ 6,075.00 |

The Panel has assessed the total hearing session fees to Respondent.

All balances are payable to FINRA Dispute Resolution Services and are due upon receipt.

FINRA Dispute Resolution Services
Arbitration No. 23-02354
Award Page 4 of 4

## ARBITRATION PANEL

| | | |
|---|---|---|
| Kenneth J. Horowitz | - | Public Arbitrator, Presiding Chairperson |
| Michael H DuBoff | - | Public Arbitrator |
| Julian Stapleford | - | Non-Public Arbitrator |

I, the undersigned Arbitrator, do hereby affirm that I am the individual described herein and who executed this instrument, which is my award.

## Concurring Arbitrators' Signatures

*Kenneth J. Horowitz*
_____
Kenneth J. Horowitz
Public Arbitrator, Presiding Chairperson

11/12/2024
_____
Signature Date


*Michael H DuBoff*
_____
Michael H DuBoff
Public Arbitrator

11/12/2024
_____
Signature Date


*Julian Stapleford*
_____
Julian Stapleford
Non-Public Arbitrator

11/12/2024
_____
Signature Date


Awards are rendered by independent arbitrators who are chosen by the parties to issue final, binding decisions. FINRA makes available an arbitration forum—pursuant to rules approved by the SEC—but has no part in deciding the award.


November 13, 2024
_____
Date of Service (For FINRA Dispute Resolution Services use only)

FINANCIAL INDUSTRY REGULATORY AUTHORITY
OFFICE OF DISPUTE RESOLUTION
CASE NO. 23-02354

In the Matter of the Arbitration Between

LPL FINANCIAL LLC,

        Claimant,

vs.

MARIO E. RIVERO, JR.,

        Respondent.

## AFFIDAVIT OF INDEBTEDNESS AND ATTORNEY'S FEES

Andrew Thomson, representative of Claimant LPL FINANCIAL, LLC, hereby swears and affirms:

1.    My law firm, Baritz & Colman LLP, is counsel to LPL Financial, LLC, the Claimant in this case. I am above the legal age of majority and otherwise competent to make this affidavit. I make this affidavit based on my review of LPL Financial's records relating to Respondent Mario E. Rivero, Jr. and my firm's billings records.

2.    Claimant previously submitted our firm's billing records for time incurred on this case. Through November 7, 2024, the total amount of fees our firm has incurred on this matter is $25,975.00. The hourly rate for all professionals working on this case has been $250.00.

3.    As for principal, Respondent owes the following:

-    $5,176.24 under the Representative Agreement;
-    $161,598.00 under Note 1; and
-    $25,306.00 under Note 2.

4.      Regarding interest on those obligations, through November 7, 2024, Respondent owes the following

-       $871.12 under the Representative Agreement (with a daily rate of $0.75);
-       $51,909.99 under Note 1 (with a daily rate of $40.71); and
-       $10,082.86 under Note 2 (with a daily rate of $7.91).

These calculations through November 7, 2024, are outlined in the attached Exhibit A.

5.      LPL Financial has also incurred the following costs: member process fee of $3,250.00, initial filing fee (non-refundable) of $1,000.00, initial filing fee (refundable) of $1,125.00, and a member surcharge fee of $1,700.00, for a total of $7,075.00 in costs.

6.      Including all outstanding principal, interest, attorney's fees, and costs, through November 7, 2024, Respondent owes LPL Financial the total sum of $287,994.21.

BARITZ & COLMAN LLP

Andrew Thomson
Counsel for Claimant LPL Financial LLC

SWORN TO and subscribed before me this ___ day of ___November___, 2024.

Notary Public, State of ___
My Commission Expires:

Michelle Izzo Chirichigno
Notary Public
State of Florida
Comm# HH250186
Expires 6/20/2026

[X] Personally Known
[ ] Produced Identification

2

MARIO RIVERO - 235N

$254,944.21

$192,080.24
$62,863.97

**Balance Outstanding - Forgivable Loan**

| | | |
|---|---|---|
| Loan Amount | | $161,598.00 |
| Annual Rate | | 9.07% |
| Daily Rate | | 0.025% |
| **Days Outstanding** | Start date: 5/12/2021 | End date: 11/7/2024 | 
| | | 1,275 |
| **Interest Due - Loan** | | $51,909.99 |

5-year loan = Mid-term
AFR (1.07%) + 8%
Start Date = 5/12/21 (Termination Date)

**Balance Outstanding - Repayable Loan**

| | | |
|---|---|---|
| Loan Amount | | $25,306.00 |
| Annual Rate | | 11.25% |
| Daily Rate | | 0.031% |
| **Days Outstanding** | Start date: 5/12/2021 | End date: 11/7/2024 |
| | | 1,275 |
| **Interest Due - Loan** | | $10,082.86 |

2-year loan = Short-term
Prime Rate (3.25%) + 3% + 5%
Start Date = 5/12/21 (Termination Date)

**Balance Outstanding - Fees**

| | | |
|---|---|---|
| Fees Amount | | $5,176.24 |
| Annual Rate | | 5.25% |
| Daily Rate | | 0.015% |
| **Days Outstanding** | Start date: 9/10/2021 | End date: 11/7/2024 |
| | | 1,154 |
| **Interest Due - Fees** | | $871.12 |

Prime Rate (3.25%) + 2%
Date of First Demand = 08/12/2021
Start Date (20 *business* days after 8/12/2021 (date of demand)) = 9/10/2021

**5-Year Forgivable Loan Interest (Note 1, Paragraph 2):**

> 2. Principal and Interest. The Principal balance shall bear interest at the minimum federal rate per annum published by the Internal Revenue Service ("IRS") (computed on the basis of a 360-day year, actual days elapsed) as of the date the proceeds of the loan is paid to Borrower by LPL ("Disbursement Date"). Interest shall begin accruing on the Disbursement Date. If any Event of Default or any event, act or condition that with notice or lapse of time, or both, would constitute an Event of Default occurs and is continuing, interest shall accrue at the minimum federal rate per annum published by the IRS that would otherwise be applicable plus a rate no greater than 8%, such rate shall be determined in LPL's sole discretion. All such interest shall be payable upon demand.

**2-Year Repayable Loan Interest (Note 2, Section 2):**

> 2. Principal and Interest. [illegible] Wall Street Journal Prime Rate [illegible] All such interest shall be payable upon demand.

**AR (Fees) Interest (Rep Agreement, Section 2(A):**

> 2. THE REPRESENTATIVE'S OBLIGATION. THE REPRESENTATIVE:
> (A) Shall pay any balance owing to LPL within ten (10) business days of receipt of LPL's statement unless other arrangements are made in writing with the Chief Financial Officer of LPL. [illegible] twenty (20) business days from receipt of such statement shall accrue interest at the prime rate plus 2%. LPL shall have the right to reduce a Representative's amount of Commissions [illegible] by the amount of any outstanding balance owed to LPL by the Representative.

**AFR**
https://apps.irs.gov/app/picklist/list/federalRates.html

Applicable Federal Rates (AFR) for May 2021

| | Annual | Semiannual | Quarterly | Monthly |
|---|---|---|---|---|
| | | Period for Compounding | | |
| **Short-term** | | | | |
| AFR | 0.13% | 0.13% | 0.13% | 0.13% |
| 110% AFR | 0.14% | 0.14% | 0.14% | 0.14% |
| 120% AFR | 0.16% | 0.16% | 0.16% | 0.16% |
| 130% AFR | 0.17% | 0.17% | 0.17% | 0.17% |
| **Mid-term** | | | | |
| AFR | 1.07% | 1.07% | 1.07% | 1.07% |
| 110% AFR | 1.18% | 1.18% | 1.18% | 1.18% |
| 120% AFR | 1.28% | 1.28% | 1.28% | 1.28% |
| 130% AFR | 1.39% | 1.39% | 1.39% | 1.39% |
| 150% AFR | 1.62% | 1.61% | 1.61% | 1.60% |
| 175% AFR | 1.88% | 1.87% | 1.87% | 1.86% |
| **Long-term** | | | | |
| AFR | 2.16% | 2.15% | 2.14% | 2.14% |
| 110% AFR | 2.38% | 2.37% | 2.36% | 2.36% |
| 120% AFR | 2.60% | 2.58% | 2.57% | 2.57% |
| 130% AFR | 2.82% | 2.80% | 2.79% | 2.78% |

**Wall Street Journal Prime Rate**

| Effective Date | Rate |
|---|---|
| 12/16/2008 | 3.25% |
| 12/17/2015 | 3.50% |
| 12/15/2016 | 3.75% |
| 3/16/2017 | 4.00% |
| 6/15/2017 | 4.25% |
| 12/14/2017 | 4.50% |
| 3/22/2018 | 4.75% |
| 6/14/2018 | 5.00% |
| 9/27/2018 | 5.25% |
| 12/20/2018 | 5.50% |
| 8/1/2019 | 5.25% |
| 9/19/2019 | 5.00% |
| 10/31/2019 | 4.75% |
| 3/4/2020 | 4.25% |
| 3/16/2020 | 3.25% |
| 3/17/2022 | 3.50% |

EXHIBIT A

# FINRA.

**TO:**        Michael H DuBoff
             Kenneth J. Horowitz
             Julian Stapleford

**CC:**        Neil S. Baritz, Esq.
             Mario Everildo Rivero,, Jr.

**From:**      Leonie A. Feliciano
             Senior Case Administrator

**Subject:**   FINRA Dispute Resolution Services Arbitration Number 23-02354
             LPL Financial LLC vs. Mario E. Rivero, Jr.

**Date:**      November 11, 2024

Attached are the post-hearing submissions that we have received in the above-referenced matter.

Thank you for your consideration and prompt attention to this matter. If you have any questions, please do not hesitate to contact me at 212-858-3928 or by email at Neprocessingcenter@finra.org.

LZH:lzh:LC62D
idr: 11/17/2021

RECIPIENTS:
Michael H DuBoff
Kenneth J. Horowitz
Julian Stapleford

CC:
Neil S. Baritz, Esq., Baritz & Colman LLP, 1075 Broken Sound Parkiway NW, Suite 102, Boca
    Raton, FL 33487
On Behalf Of: LPL Financial LLC

Mario Everildo Rivero,, Jr., Federal Correctional Complex, Register Number: 90914-509,
    Coleman Camp, P.O. Box 1031, Coleman, FL 33131
On Behalf Of: Mario Everildo Rivero, Jr.

Investor protection. Market integrity.        FINRA Dispute Resolution Services        Brookfield Place        t  212.858.4200
                                            Northeast Regional Office              200 Liberty Street      www.finra.org
                                                                                   New York, NY 10281



PRESS FIRMLY TO SEAL

PAPER POUCH

DEC 06, 2024

34475

RDC 03    0 Lb 5.90 Oz    **$10.45**    S2324P503429-10

# UNITED STATES POSTAL SERVICE ®

# PRIORITY® MAIL

...ate specified for domestic use.

...s include $100 of insurance (restrictions apply).*

...vice included for domestic and many international destinations.

...l insurance.**

...ionally, a customs declaration form is required.

...certain items. For details regarding claims exclusions see the
...tp://pe.usps.com.

...anual at *http://pe.usps.com* for availability and limitations of coverage.

## ...E ENVELOPE
...WEIGHT

To schedule free Package Pickup,
scan the QR code.

■ INSUF

EXPECTED DELIVERY DAY: 12/09/24

USPS TRACKING® #

9505 5145 7063 4341 6848 59

EP14F October 2023
OD: 12 1/2 x 9 1/2

PAPER POUCH

FROM: Noelle Rivero
5610 nw 40th ter.
Coconut Creek, FL 33073


SCREENED By USMS

TO:

United States District Court
for the Middle District of Florida
Ocala Division,
Attn: Office of the Clerk,
207 nw 2nd Street,
Ocala, Fl. 34475.



This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.

# *UNITED STATES*
## *POSTAL SERVICE* ®

# PRIORITY®
# MAIL

# ENVELOPE
HT

p,

# INSURED



EP14F October 2023
OD: 12 1/2 x 9 1/2

## VISIT US AT USPS.COM®
### ORDER FREE SUPPLIES ONLINE

For Domestic shipments, the maximum weight is 70 lbs. For international shipments, the